1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   HOWARD FORBES,                          No. 2:16-cv-01884 MCE GGH P

12               Petitioner,

13       v.                                  FINDINGS AND RECOMMENDATIONS

14   L. ELDRIDGE,

15               Respondent.

16

17

18   *Introduction and Summary*

19          Petitioner, a state prisoner proceeding pro se, has filed a petition for writ of habeas corpus

20   pursuant to 28 U.S.C. § 2254.  The matter was referred to the United States Magistrate Judge

21   pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302(c).

22          Petitioner's primary claim involves the seemingly inadvertent failure on the part of the

23   trial court to give the defense requested "Fifth Amendment-no-need-for-defendant-to-testify"

24   instruction, a constitutional violation conceded in this case.  Because the prosecutor in final

25   argument commented inferentially on petitioner's failure to testify, the omission in giving the

26   instruction following such comment makes this a much closer prejudice case than the state Court

27   of Appeal set forth.

28   ////

                                            1

1    The remaining claims, 2, 3, 4 raised by petitioner are procedurally barred with insufficient

2    cause and prejudice to excuse the default. Claim 5, two claims of ineffective assistance of

3    counsel, should be denied on their merits.

4    For the reasons set forth herein, the undersigned recommends that the petition be denied.

5    *Background Facts*

6    In this habeas action as provided by 28 U.S.C. § 2254, as amended by the Antiterrorism

7    and Effective Death Penalty Act of 1996 ("AEDPA"), the focus of the primary issue is the factual

8    background involving prejudice, otherwise known as substantial, injurious prejudice.  Therefore,

9    the facts as found by the Court of Appeal are set forth below:

> Defendant was charged in an information, filed January 24, 2012, with kidnapping for the purpose of committing another crime (Pen.Code, § 209, subd. (b)(1)), rape of an intoxicated person (Pen.Code, § 261, subd. (a)(3)), three counts of forcible rape (Pen.Code, § 261, subd. (a)(2)), two counts of forcible oral copulation (Pen.Code, § 288a, subd. (c)(2)), sodomy by use of force (Pen.Code, § 286, subd. (c)(2)), and aggravated assault (Pen.Code, § 245, subd. (a)(1)). The information also contained various sentencing enhancement allegations.

> The victim, a 22–year–old woman, became very intoxicated while visiting a bar with friends in September 2011. Her friends lost track of her, but when last seen she had no visible injuries.

> The victim remembered being unable to find her friends at the bar. When next she could recall, she was disoriented and engaged in sexual intercourse in an unfamiliar place with a stranger, whom she identified at trial as defendant. He initially complied when she asked him to stop, but he became angry when she told him she wanted to go home. In the ensuing hours, defendant prevented the victim from leaving the residence while forcing her to engage in various sexual acts. A video of the victim, taken the morning of the assault, was later located by police on defendant's phone.

> Around dawn, defendant drove the victim to El Cerrito, where he left her in a parking lot near a fast food restaurant. Although the restaurant was closed, she was admitted when she knocked on the door. Responding police officers found the victim crying uncontrollably and visibly injured. Both her eyes and the right side of her face were blackened. Examination of the victim at the hospital revealed a bruised and swollen right eye, bruises on her neck, breast, and arm, an abrasion and a bruise on her right thigh, and a laceration under her left eye, as well as vaginal and rectal evidence of sexual assault. Defendant's DNA was detected in both the anal and vaginal swabs.

> ////

2

> Defendant was convicted on all counts, and the jury found true the allegation he inflicted great bodily injury. He was sentenced to multiple consecutive indeterminate life terms.

People v. Forbes, No. A138046, 2015 WL 871168, at *1 (Cal. Ct. App. Feb. 27, 2015).

Petitioner did not contest the fact that he had committed the sex acts at issue—he argued that the victim, hereafter, Jane Doe, was not intoxicated, or did not appear to be so, and had consented to the sex and presumably, the so-called "rough sex."[1] The defense heavily relied on the fact that Jane Doe's memory was impaired as she had "blacked out" by reason of alcohol abuse, and therefore, her memories after recovering from blackout were unreliable.

*Claims Presented in the Amended Petition*

Petitioner presents the following five claims in his amended petition:

1. The Trial Court Failed to Give the Requested Fifth Amendment Instruction;

2. The Trial Court Failed to Respond to the Jury's Question of Law;

3. Petitioner's Conviction Was Based on Evidence "Less Than Proof Beyond a Reasonable Doubt" (Preliminary Hearing);

4. The Conviction Was Based on Insufficient Evidence; and

5. Counsel was Ineffective or Failing to Investigate and Ineffective for Failure to Object to A Question About a Tattoo.

Claims 2-4 are complicated in that petitioner appears to argue as a derivative or "tag-along" claim that his counsel was ineffective for failing to attempt to have the verdict await the answering of the jury's question and that appellate counsel was ineffective for not advancing an insufficiency of the evidence claim.

*Legal Standards*

Claims 1 and 5 directly involve AEDPA deference. Thus, the standards here will focus upon the requirement that a state court's legal determination be AEDPA unreasonable.

////

////

---

[1] The defense had no explanation about the injuries Jane Doe indisputably suffered except to suggest (without evidence) that Jane Doe had received these earlier in an argument with another female.

3

For purposes of applying § 2254(d)(1), clearly established federal law consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 565 U.S. 34, 39 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)). Circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 569 U.S. 58, 63-64 (2013) (citing Parker v. Matthews, 567 U.S. 37, 48 (2012)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id.

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, supra, 529 U.S. at 412. See also Lockyer, supra, 538 U.S. at 75 (it is "not enough that a federal habeas court, 'in its independent review of the legal question,' is left with a 'firm conviction' that the state court was 'erroneous.' ") "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood

4

1    and comprehended in existing law beyond any possibility for fairminded disagreement."

2    Harrington, 562 U.S. at 103.

3    *Discussion*

4        A. Claim 1: The Failure to Give CALCRIM 355 Involving a Defendant's Right Not to

5            Testify

6        All concede that the failure to give CALCRIM 355[2] was constitutional error.  The analysis

7    of the Court of Appeal on this issue is as follows:

8            The trial court erred in omitting CALCRIM No. 355. In *Carter v.*
9            *Kentucky* (1981) 450 U.S. 288, the United States Supreme Court
             held that a trial judge, upon the defendant's request, has a
10           constitutional obligation to instruct the jury not to draw an adverse
             inference from the defendant's failure to take the stand. ( *Id*. at p.
11           300.) Although the *Carter* court reversed the defendant's conviction
             as a result of the instructional error, it declined to consider whether
12           the error was subject to harmless error analysis. ( *Id*. at pp. 304,
             305.) As defendant acknowledges, California courts have
13           subsequently concluded a trial court's failure to give a requested
             adverse inference instruction is subject to harmless error analysis
14           under *Chapman v. California* (1967) 386 U.S. 18 (*Chapman* ).
             (*People v. Evans* (1998) 62 Cal.App.4th 186, 197.)

15   People v. Forbes, 2015 WL 871168, at *2.[3]

16       The analysis of the Court of Appeal is the analysis at issue here, except that the harmless

17   error standard used in federal habeas, as set forth below*,* varies from the "beyond a reasonable

18   doubt" Chapman standard.

19   ////

20   _____

21   [2] CALCRIM 355 provides the following: A defendant has an absolute constitutional right not to
     testify. He or she may rely on the state of the evidence and argue that the People have failed to
22   prove the charges beyond a reasonable doubt. Do not consider, for any reason at all, the fact that
     the defendant did not testify. Do not discuss that fact during your deliberations or let it influence
23   your decision in any way.
     [3] The law is not so clear in the Ninth Circuit.  In United States v. Soto, 519 F.3d 927, 931, 935-
24   936 (9th Cir. 2008), the panel recognized that Carter error had been wrongly ameliorated in a
     previous Ninth Circuit decision United States v. Castenada, 94 F.3d 592 (9th Cir. 1996), by an
25   instruction regarding the presumption of innocence and burden of proof. However, habeas corpus
     cases are decided by clearly established *United States Supreme Court* authority, and no one here,
26   including the Court of Appeal doubts that Carter held what it held.  Castenada is more of a "close
     enough is good enough" case, and as cited by the Court of Appeal, was more of harmless error
27   factor.  In any event, the parties do not contest that Carter error occurred, and the undersigned
     will not discuss it further here.
28

                                              5

While the trial court did not give CALCRIM No. 355 as a part of the formal jury instructions, defendant's Fifth Amendment right against self-incrimination and the issues relating to it were not ignored by the court. The court's formal instructions included a caution that neither side was required to call as witnesses all persons with knowledge of the events, and the jury was told the defendant was presumed innocent and the prosecution was required to prove guilt beyond a reasonable doubt. In addition, prior to voir dire the court told the prospective jurors defendant was not required to testify and any failure to testify could not be considered against him. In the process, the court delivered the substance of CALCRIM No. 355, saying: "If a criminal defendant exercises that right [not to testify] and does not testify, then the jury is not to discuss it, is not to consider it, and it is not to let the fact the defendant didn't testify to enter into their deliberations at all." The court asked whether the prospective jurors understood and could follow these principles and confirmed their assent, although it is not clear from the transcript precisely which jurors the court was addressing at the time. The issue arose twice again during voir dire, when the prosecutor referred to defendant's right not to testify while questioning prospective jurors.

\*\*\*

We conclude the trial court's inadvertent failure to give CALCRIM No. 355 was harmless beyond a reasonable doubt. (See *Chapman*, *supra*, 386 U.S. at p. 24.) We reach the conclusion for three related reasons. First, as discussed above, the trial court instructed the prospective jurors prior to voir dire on the issues raised by CALCRIM No. 355, essentially repeating to them the text of the instruction. While defendant's failure to testify was not mentioned in the formal jury instructions, the court told the jury neither side was under an obligation to call knowledgeable witnesses and the prosecution was required to prove guilt beyond a reasonable doubt. These conveyed much of the substance of the omitted instruction. (See *U.S. v. Castaneda* (9th Cir.1996) 94 F.3d 592, 596 [" '[a] defendant is not entitled to any particular form of instruction, nor is he entitled to an instruction that merely duplicates what the jury has already been told' "].) Second, the prosecution did not affirmatively call the jury's attention to defendant's silence in closing argument, reducing the risk of prejudice. Third, the evidence of defendant's guilt was very strong. As discussed above, the victim was found in an emotional and physical state suggesting she had been the victim of serious violence, and the medical exam found evidence of sexual abuse. The extent of her injuries and the emotional trauma she exhibited strongly supported an inference the sexual acts had occurred against her will. Defendant's DNA was found in her vaginal and anal swabs, and his cell phone contained a video of the victim, taken the morning of the assault. There was no realistic room for doubting the substance of her testimony that crimes of sexual violence had been committed against her and defendant was the person who committed them.

Defendant contends the omission was particularly prejudicial because the victim had no memory about how she came to be with

defendant and admitted some uncertainty about the order in which the remaining events occurred. Contrary to defendant's argument, the victim's uncertainty about chronology did not materially affect the credibility of her testimony. Regardless of the order in which the events occurred, the victim's description of the charged criminal acts was reasonably detailed and vivid, and her recollection of their occurrence was supported by confirming forensic evidence. As defendant effectively acknowledges, the period during which the victim lacked any memory was significant primarily to the charge of rape of an intoxicated person under Penal Code section 261, subdivision (a)(3), since the victim was unable to testify about the circumstances under which defendant initiated sexual intercourse with her. Notwithstanding the victim's inability to recall, the evidence of her condition that night and of defendant's subsequent conduct allowed the jury to infer the circumstances necessary for a conviction under subdivision (a)(3), and defendant does not challenge the sufficiency of the evidence to support this conviction. There is no reason to believe defendant's failure to testify influenced the jury's decision on this or any other charge.

People v. Forbes, 2015 WL 871168, at *2-3.

On appeal, a major defense connection was that the voir dire "instruction" and the prosecutor's comments on it during voir dire were sometimes preceded by the caveat: "If an instruction is given." This caveat makes sense in that at the time of voir dire, it is uncertain whether the defendant will testify, and also, in any event, some defense counsel may not want the instruction given because it may seem to highlight the fact that the defendant did not testify. In this case, defense counsel requested the instruction, and the court was obliged to give it in final instructions.

But overall, the voir dire instruction by the judge on the defendant's right not to testify without consequence, and the prosecutor's references to it, were strong and unequivocal:

Now, kind of a corollary or offshoot of that is in every criminal case, a defendant has an absolute constitutional right not to testify. That means he or she may rely on the state of the evidence and argue that the People have failed to meet their burden of proof beyond a reasonable doubt.

If a criminal defendant exercises that right and does not testify, then the jury is not to discuss it, is not to consider it, and it is not to let the fact the defendant didn't testify to enter into their deliberations at all.

Is there anybody who won't follow those principles of law if I give such an instruction in this case? Okay. Sometimes people feel like, you know, it's a trial, so you should hear from both sides, and it's fine to have those feelings. Just keep in mind that from a

7

1      constitutional standpoint, a criminal defendant has no burden of
       proof and can -- doesn't have to present any evidence at all.
2
       Not only does he not have to testify, but his or her attorney doesn't
3      have to call a single witness and, theoretically, doesn't have to ask a
       single question of any witness called by the prosecution, but can
4      still stand up at the end of the case and say, ladies and gentlemen,
       you notice I didn't ask a question? I didn't call a witness.
5

6  ECF No. 39-3 at 28.[4]

7  Similarly, the prosecutor's voir dire questions on the subject were fair and correct:

8      MS. RAY: Okay. Because the judge is going to instruct you that the
       defendant doesn't have to testify, as a constitutional right, and you
9      may not hear from him. Can you still judge the evidence that you
       do hear and make a determination?
10

11  ECF No. 39-3 at 81.

12     You can't go back there and say: Well, he didn't testify, so he must
       be guilty, and take that into consideration in your deliberations,
13     because the defendant has a constitutional right not to testify and
       that's why the law is that way. He can just make me prove the case.
14     Does that make sense?

15  ECF No. 39-3 at 168.

16     After review of the transcript, and except with respect to its finding that the prosecutor did

17  not comment on petitioner's silence, the undersigned finds that the Court of Appeal's summary of

18  the facts were correct and fair and that giving rise to a finding of lack of prejudice was fair and

19  correct. See also ECF No. 38 at 15-22 (Respondent's Summary of Facts).

20     Thus, at this point, the determination that petitioner was not prejudiced[5] by the failure to

21

22  _____
    [4] As the Court of Appeal pointed out, however, it was unclear to whom this voir dire instruction
23  was addressed. It is further unclear that instructions to a potential jury panel *en masse* are entitled
    to the presumption that a jury is presumed to follow instructions. It is less likely that the potential
24  jurors in a jury voir dire exhibits the attention that one would presume when a seated jury is being
    directly addressed by the judge. This situation is a bit different from that presented by Weeks v.
25  Angelone, 528 U.S. 225, 234 (2000) where the empaneled jury would have been focused on the
    instructions guiding deliberations. See Penry v. Johnson, 532 U.S. 782, 801-802 (2001)
26  (expressing some skepticism whether the jury would have recalled voir dire instructions). But see
    Moran v. Biter, No. 5:14-CV-02641-EJD, 2018 WL 1626768, at *16 (N.D. Cal. Mar. 31, 2018)
27  (where voir dire instructions were presumed to be followed along with a trial judge's curative
    instruction).
28  [5] The prejudice standard for federal habeas actions is set forth below.

8

1    give the instruction was without a doubt, fair, and AEDPA reasonable.

2           However, as the defense pointed out in its state appellate rebuttal brief, after the State had

3    emphasized the lack of prejudice, and as petitioner points out here in this habeas action, all of this

4    correct, cautionary pre-trial instruction may have been eradicated by the <u>Griffin</u> error of the

5    prosecution (comment on the defendant's failure to testify as bolstering the prosecution case) in

6    rebuttal argument—the last word from the parties before instructions were given and the jury

7    went into deliberations.[6]  The <u>Griffin</u> error was sandwiched in an argument for the jury to believe

8    Jane Doe's testimony as to what happened in the room with petitioner:

9                       So let's take into some consideration about the credibility of Jane
                       Doe. Jane Doe came in and told you what she remembers and what
10                      she doesn't. I think that goes to her credibility right there.

11                      She didn't have to tell you what she doesn't remember. She could
                       have filled in all those gaps if she's not telling you the truth or
12                      making a false accusation, and say to you: I remember specifically
                       a fist landing on my face.
13
                        I mean, it wouldn't be so farfetched for her to do that, considering
14                      she saw the injuries on her face. What she told you is: I don't
                       remember how I got the injuries on my face. I know I did.
15
                       Those are some examples. There's numerous of those, where she
16                      could have told you something that was not accurate or not the
                       truth. *What she says is: What I remember is these things happening.*
17                      For example, going into the kitchen after the first incident.

18                      *This evidence is uncontradicted, remember. There is no one that got
                       up and said: That's not what happened. Not one person.*
19
                       So when she gets up there and she tells you the initial incident,
20                      Count 2 again, the rape of the intoxicated person that she's pushing
                       him off, eventually he gets off, he doesn't just hop right off of her.
21                      And she says: I say stop, and goes out into the kitchen.

22   ECF No 39-5 at 753 (emphasis added).[7]

_____

23   [6] <u>Griffin v. California</u>, 380 U.S.609 (1965).  To be clear, the issue here is not a claim of <u>Griffin</u>
     error because such a claim is not contained in the petition.  However, commenting on a
24   defendant's silence will in most cases require a curative instruction to reduce potential prejudice.
     The <u>Griffin</u> situation, with no curative instruction, no doubt complicates the <u>Carter</u> prejudice
25   analysis which requires an admonition to the jury, when requested, not to consider a defendant's
     not testifying. <u>Carter</u>, *supra*, 450 U.S. 288.
26   [7] The prosecutor later continued: "And that's a two part -- part of the instruction. And it
27   says: If the defendant actually and reasonably believed that the other person consented,
     and these are -- Counts 1 through 8, basically, the forcible sex crimes, the rape by
28

9

1    The U.S. Constitution prohibits comments, both direct and indirect, on a defendant's

2    decision not to testify.

> While a direct comment about the defendant's failure to testify
> always violates Griffin, a prosecutor's indirect comment violates
> *Griffin* only "if it is manifestly intended to call attention to the
> defendant's failure to testify, or is of such a character that the jury
> would naturally and necessarily take it to be a comment on the
> failure to testify." *Lincoln v. Sunn*, 807 F.2d 805, 809 (9th
> Cir.1987). Although the prosecutor's comments here did not refer
> directly to Hovey's decision not to testify, they were indirect
> comments impermissible under Griffin. By focusing on Hovey's
> failure to explain his actions or to contradict the informants'
> testimony, the prosecutor's indication that Hovey "never said
> anything ... about why ... he did these things" and that Hovey
> "never told [the jury] anything different" called attention to
> Hovey's decision against taking the stand in his own defense. The
> prosecutor's statement that "[t]here's nothing different" naturally
> and necessarily implicates Hovey's decision not to testify, as Hovey
> is the only person who could definitively answer the question of
> whether he used a knife. *See id.* at 810 ("Courts have distinguished
> between those cases in which the defendant is the sole witness who
> could possibly offer evidence on a particular issue, and those cases
> in which the information is available from other defense witnesses
> as well."); *see also Williams v. Lane*, 826 F.2d 654, 665 (7th Cir.
> 1987) ("*Prosecutorial references to 'uncontradicted' testimony are*
> *more readily deemed indirect references to the defendant's failure*
> *to testify in cases where it is 'highly unlikely that at least a portion*
> *of the testimony could have been contradicted by anyone other than*
> *the defendant.' "* (quoting  *United States v. Buege*, 578 F.2d 187,
> 189 (7th Cir.1978)).

18    Hovey v. Ayers, 458 F.3d 892, 912 (9th Cir. 2006) (emphasis added). See also Cook v. Schiro,

19    538 F.3d 1000, 1020 (9th Cir. 2008); Valencia v. Haws, No. 1:11-cv-00021-LJO-SKO-HC, 2013

20    WL 2995931, at *26-27 (E.D. Cal. June 14, 2013).

21    There is no doubt in the undersigned's mind that Griffin error occurred here. The only

22    person in the room with Jane Doe was petitioner.  No other person could have testified to exactly

23    what took place there besides petitioner.  And the comment does not relate only to one factual

24    incident; the prosecutor argued generally about Jane Doe's testimony: "What I [Jane Doe]

25    intoxication, and the kidnap. Okay. *Well, there is no evidence of what he actually*

26    *believed.* Not a shred. So you could just skip that." ECF No. 39-5 at 756-757 (emphasis

27    added). The undersigned believes this to be a fairer statement directed to the state of the
      evidence as a whole, even though, realistically, in this situation, only the petitioner could

28    have said what he actually believed.

1   remember is these things [specific events of the night] happening."  While there was expert

2   testimony on both sides bolstering and diminishing Jane Doe's credibility, e.g., alcoholic status of

3   Jane Doe, these experts could not, and did not, testify to precisely what took place in the room,

4   and whether Jane Doe had actually consented to the acts.  And, the issue here was not whether

5   petitioner was present, or that sexual acts took place, the critical issue was whether the sex acts

6   and Jane Doe's movements within petitioner's house were consensual. Thus, in this respect, the

7   finding by the Court of Appeal that the prosecutor did not mention defendant's failure to testify in

8   final argument is AEDPA unreasonable. The transcript speaks for itself, and the Court of Appeal

9   missed that part of the transcript.

10       Carter error is not structural error, and prejudice to petitioner must be found.  United

11   States v. Soto, 519 F.3d 927 (9th Cir. 2008). On federal habeas review of state court findings of

12   non-structural constitutional error, the harmless error standard of Brecht v. Abrahamson, 507 U.S.

13   619 (1993), applies. The question is whether the error had substantial and injurious effect or

14   influence in determining the jury's verdict and resulted in "actual prejudice." See Brecht, 507

15   U.S. at 637; Fry v. Pliler, 551 U.S. 112, 120 (2007). Because the Brecht standard "obviously

16   subsumes" the more liberal AEDPA/Chapman standard, the Ninth Circuit has held "we need not

17   conduct an analysis under AEDPA of whether the state court's harmlessness determination on

18   direct review...was contrary to or an unreasonable application of clearly established federal law."

19   Pulido v. Chrones, 629 F.3d 1007, 1012 (9th Cir. 2010) (citing Fry, 551 U.S. at 120). See also

20   Ortiz v. Yates, 704 F.3d 1026, 1038, n. 9 (9th Cir. 2012).  Instead, a federal habeas court is to

21   apply the Brecht test without regard for the state court's harmlessness determination. Pulido, 629

22   F.3d at 1012 (citing Fry, 551 U.S. at 121–22); see also Merolillo v. Yates, 663 F.3d 444, 454–55

23   (9th Cir. 2011) (Applying " 'the Brecht test without regard for the state court's harmlessness

24   determination.' ")

25       The U.S. Supreme Court has since clarified that Brecht incorporates the requirements of

26   §2254(d) (AEDPA). Davis v. Ayala, 135 S. Ct. 2187, 2199 (2015). Accordingly, if a state court

27   has determined that a trial error was harmless, "a federal court may not award habeas relief under

28   § 2254(d) unless the harmlessness determination itself was unreasonable." Id. (quoting Fry, 551

1    U.S. at 119) (emphasis in original). "[R]elief is proper only if the federal court has 'grave doubt

2    about whether a trial error of federal law had substantial and injurious effect or influence in

3    determining the jury's verdict.' " Davis, 135 S. Ct. at 2197–98 (quoting O'Neal v. McAninch, 513

4    U.S. 432, 436, 115 S.Ct. 992 (1995)). The Brecht test will be applied here, but with due

5    consideration of the state court's reasons for concluding the error was harmless beyond a

6    reasonable doubt, Jones v. Harrington, 829 F.3d 1128, 1141-42 (9th Cir. 2016), but not with

7    respect to the finding that the prosecutor did not commit Griffin error.[8]

8         It is to be emphasized again, that Griffin error is not a claim in and of itself here; it is an

9    important factor, nonetheless, in assessing the prejudice to petitioner in not having the jury

10   receive a "non-testimony-of-the-defendant" instruction.  Thus, there was a perfect storm of sorts

11   with respect to the Fifth Amendment—the defense requested a jury instruction on the right to

12   remain silent, which was not given, and the prosecutor commented on petitioner's silence which

13   made the instruction all the more necessary.  The prejudice analysis of the claimed Carter

14   constitutional violation has become much, much closer.

15        As set forth above, the facts of this case with respect to a combination of Carter and

16   Griffin error are rare indeed.  The undersigned has not found a single case where the "perfect

17   storm" combination was present as it is here.  Indeed, the absence of Griffin error is usually one

18   of the reasons for finding Carter error to be harmless. See e.g., Cornett v. Uribe, No. C 11-04262

19   PJH-PR, 2013 WL 1899731, at *4-5 (N.D. Cal. May 7, 2013). Moreover, in Soto, supra, 519 F.3d

20   927, the Ninth Circuit opined that if the credibility of the primary witness was at issue, it "might

21   be persuaded" that sufficient harm had occurred from the failure to give the no-inference-from-

22   failure to-testify instruction. The credibility of Jane Doe was a pivotal issue in this case.

23        On the other hand, there are several factors which weigh in favor of harmlessness. A clear

24   instruction on petitioner's right not to testify was given during voir dire, although it is difficult to

25   _____

26   [8] The cited law was taken from the undersigned's opinion in Minchak v. Covello, No. 2:20-cv-
     00063 KJM GG HP, 2020 WL 3451398, at *n.4 (E.D. Cal. June 24, 2020).  The precise
27   application of AEDPA is a difficult issue here in that part of the Court of Appeal's analysis was
     very reasonable, and a part was not.  The undersigned's Brecht findings herein would have been
28   made regardless of AEDPA in any event.

1  understand how much attention was being paid by the potential jury panel.[9]  See United States v.

2  Padilla, 639 F.3d 892, 897-898  (9th Cir. 2011)  (Carter instruction to a jury any time *after* the

3  jury panel is sworn is sufficient; it can be a factor in the harmlessness analysis even if given in

4  voir dire (citing Soto, supra, 519 F.3d 927).  Moreover, the undersigned completely agrees with

5  the evidence summation by the Court of Appeal, in which it gave a finding the Carter error to be

6  harmless (under the reasonable doubt standard because the evidence so clearly supported the

7  verdict).  Particularly significant to the undersigned are the admissions/statements of petitioner

8  testified to by Jane Doe—a clear indication that petitioner was at times angry with Jane Doe and

9  the sex non-consensual, even to the extent of petitioner showing Jane Doe a birth control device

10  which he had ripped out of her, and chastising her for being resistant to join him in sex.  See ECF

11  No. 38-1 at 11 (detailing the reporter's transcript at ECF No. 39-5 at 154-155).  Petitioner also

12  cautioned Jane Doe on several occasions not to make him angry when he was demanding her

13  performance of sexual acts.  See e.g., ECF No. 39-5 at 174, 175.  Petitioner made an apology for

14  having performed the acts which he did, which in the context given appears to be concerning all

15  the night's events.  ECF No. 39-5 at 194.  Jane Doe's injuries from head to feet indicate that Jane

16  Doe's submission to the sexual acts was anything but consensual.  See. e.g., ECF No. 39-5 at 211-

17  213; see also ECF No 38-1 at 12. The defense suggestion in final argument, without evidence,

18  that Jane Doe had received all her bodily injuries from a female with whom she had argued earlier

19  was weak to the point of not being able to explain the injuries except that she received them from

20  petitioner.

21      Finally, after a review of the transcript, and understanding the difficulty with completely

22  assessing credibility from a written page, the undersigned finds no overarching credibility issue

23  with respect to Jane Doe.  The witness was sure, clear and concise.  Most importantly, when she

24  could not remember something—she said so and did not attempt to construct testimony for trial

25  which she had pieced together from what "must have happened." Her immediate reaction to the

26

27  [9] Indeed, at one point, the trial judge had to admonish the potential jurors ("close to" a hundred, ECF No. 39-3 at 16) in that their talking amongst themselves was disrupting the proceedings.

28  ECF No. 39-3 at 159.

1    police officers and medical personnel after the ordeal was tellingly, contemporaneously

2    confirmatory with respect to unwanted sex and petitioner's violent acts. The few times she

3    testified to events which seemed to contradict previous statements or evidence, e.g., the cell

4    phone video showing her to be clothed, and not naked as she testified, are not sufficient to take

5    away the overall credibility of Jane Doe's testimony.  The jury certainly did not think so.

6        In sum, in the context of this case, the "perfect storm" of constitutional error fails to give

7    the undersigned sufficient "grave doubt" as to the harmfulness of the errors; the errors were not

8    substantially injurious to the verdict.  Nevertheless, the undersigned finds that reasonable jurists

9    might disagree with this weighing, and the undersigned will accordingly recommend a Certificate

10   of Appealability as to this claim.

11        B.  Procedural Default of Claims 2, 3, 4

12         As set forth in the *Claim Presented* section, petitioner raised as Claims 2, 3 and 4 herein

13   the asserted failure of the trial court to respond to a jury question prior to verdict, and two similar

14   claims concerning insufficiency of the evidence.  In his habeas proceedings, the claims were

15   barred because such claims should have been raised on direct review. Respondent asserts that

16   such claims are barred by procedural default, and petitioner concedes that such claims are barred,

17   but ultimately excused. See ECF No. 44 at 2-3.[10] Because the parties agree that the claims are

18   procedurally barred, the undersigned must accept the concession. Dep't of Homeland Sec. v.

19   Thuraissigiam, 140 S.Ct. 1959 (2020).

20        Petitioner's "cause" argument that his Claims, 2, 3 and 4 , which are not ineffective

21   assistance of counsel claims, are rescued by the negligence of his attorney on appeal is foreclosed

22   by Coleman v. Thompson, 501 U.S. 722, 753-754 (1991) (an attorney's errors in a postconviction

23   proceeding do not qualify as cause for a default).  This is not a situation where the Martinez v.

24   Ryan, 566 U.S. 1 (2012) exception to Coleman applies because petitioner's claims herein are not

25   based on alleged default of an ineffective assistance of counsel claim. Davila v. Davis, 137 S. Ct.

26   ───────────────

27   [10] In addition, petition asserts that the state court did not correctly apply Strickland v.
     Washington, 466 U.S. 690 (1984). See ECF No. 44 at 3. However, there is no claim in the
     petition for ineffective assistance of counsel, and petitioner is clearly arguing ineffective

28   assistance as "cause" for his procedural default.

1   2058, 198 L. Ed. 2d 603 (2017).  Thus, to show cause for the failure to rise the three Claims

2   described above, the failure of appellate counsel to raise a particular claim must meet the exacting

3   standards of ineffective assistance of appellate counsel. Id. at 2065, see Murray v. Carrier, 477

4   U.S. 478, 492 (1986).  And it is clear, that not every attorney mistake qualifies as ineffective

5   assistance. Davila, 137 S. Ct. at 2065. Petitioner must therefore show that reasonable appellate

6   counsel on direct review should have, without a doubt, raised the "meritorious" claims, which

7   petitioner now presents to this court.  This, petitioner cannot do.

8        Claim 2 involves a jury question: "Do we the jury have to agree on all 9 counts?" The trial

9   judge was unavailable at the moment to answer the question due to duties elsewhere. ECF No.

10   39-10 at 55.  The jury soon thereafter reached a unanimous verdict without having the question

11   answered. The Solano County Superior Court found the claim, not raised on direct review,

12   procedurally barred. Id. at 54.  However, to the extent the court would review the merits, it found

13   a violation of state law because the question was not answered, but without prejudice at all

14   (finding that the jury had previously been properly instructed, and that there was no evidence that

15   any juror had capitulated to a verdict of guilty on all counts).  Id. at 56-57.  The appellate court on

16   habeas agreed in a more summary fashion, Id. at 70-72, and the Supreme Court denied the

17   petition, apparently summarily.  ECF No. 39-12 at 68. Under the doctrine of Ylst v. Nunnemaker,

18   501 U.S. 797 (1991), it is presumed that the state supreme court adopted the explained reasoning

19   of the lower courts.

20        Even assuming that the failure to answer a jury question raises a question of constitutional

21   significance, see Rackley v. Angela, No. 2:18-cv-0948 MCE GGH P, 2019 WL 804006, at *15-

22   16 (E.D. Cal. Feb. 21, 2019), petitioner goes no distance in establishing the prejudice required to

23   overcome procedural default, nor could he. Petitioner merely speculates that a juror(s) threw up

24   his/her hands when the question was not immediately answered and voted to convict on all

25   counts. It is just as likely that the jurors re-read the jury instruction on point and figured out the

26   answer to the question. Perhaps, the jury ultimately, legitimately decided to convict on all counts,

27   making the answering of the question a moot issue. We will never know, nor can we find out,

28   ////

15

1   because to do so would invade the substantive deliberations of the jury, and such is not permitted.

2   Yeager v. United States, 557 U.S. 110, 122 (2009).  Accordingly, Claim 2 is procedurally barred.

3       Claims 3 and 4 involve the sufficiency of the evidence (even assuming that petitioner

4   meant to attack the trial evidence insufficiency as opposed to that of a preliminary hearing).[11]

5   The overall record, as the undersigned has discussed previously, clearly demonstrates that Jane

6   Doe was the unwilling victim of violent sexual assaults. Based on the record, reasonable appellate

7   counsel may well have thought a claim regarding sufficiency of the evidence to be a tilting at

8   windmills which would dilute attention to the two issues which were raised on appeal. Moreover,

9   to the extent that petitioner believes items in the record detracted from petitioner's credibility, it is

10  clear that insufficiency of the evidence claims may not be based on credibility of witnesses. See

11  McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994); see also Schlup v. Delo, 513 U.S. 298,

12  330 (1995) (recognizing that the credibility of witnesses is generally beyond the scope of

13  sufficiency of the evidence review).[12] Picking here, or picking there at inconsistent, or erroneous

14  factual observations of a witness, is to no avail.

15      Petitioner insists that a video he took of one of the sex acts shows a complacent, clothed

16  Jane Doe—it does not a frightened, naked, coerced Jane Doe.  The Superior Court in its habeas

17  opinion discussed this claim in the context of it being brought as a claim for ineffective assistance

18  of appellate counsel:

19          After a while, Forbes stopped the victim, told the victim that he
            wanted to sit down, and used his left hand on the victim's shoulder
20          to move the victim over to the couch, where he sat down and the
            victim continued to orally copulate Forbes. Next, Forbes held up a
21          cell phone and the victim believed that Forbes recorded her orally
            copulating him. Then, the victim testified that Forbes grabbed her,
22          forced her down onto the floor, forced the victim's thighs spread on
            the floor, and placed his mouth and tongue onto and into her genital
23          area, while the victim said no, kicked her legs, and tried to push his

24  _____

25  [11] It is unclear whether petitioner is attacking his convictions on every count on the basis of
    insufficient evidence, or as he sets forth in the Traverse, only specific counts.  For purposes of
26  this procedural default discussion, the undersigned finds it does not matter.

27  [12] Schlup went on to hold that if a petitioner presents new and substantial evidence of actual
    innocence that was not available at the time of trial, such evidence may impact the credibility of
    witnesses. Schlup, 513 U.S. at 330. But such is not the case here—petitioner attacks the
28  credibility of Jane Doe based simply on the evidence of record.

head away from her genital area with her hands. After that, Forbes rose up and vaginally penetrated the victim with his penis, while the victim begins to cry.

Forbes argues that this testimony by the victim is insufficient to support his kidnapping for the purpose of committing rape conviction, his two forcible oral copulation convictions, and one of his three forcible rape convictions because the testimony of the victim was contradicted by a video discovered on Forbes' cell phone showing the victim fully dressed, moving about of her own free will, getting a glass of water, and offering to perform a sex act on Forbes on the way to her home. However, the law is clear that, "unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

Here, the victim's testimony is not physically impossible. Instead, Forbes appears to be contending that the victim's testimony is inherently improbable due to the cell phone video found on his cell phone. However, "[t]estimony is not inherently improbable unless it appears that what was related or described could not have occurred." (*People v. Thomas* (1951) 103 Cal.App.2d 669, 672.) Further, since "challenged evidence must be improbable 'on its face[,]'" a reviewing court does not determine if challenged evidence is inherently improbable by comparing it to other evidence. (*People v. Ennis* (2010) 190 Cal.App.4th 721,  729.) Therefore, the Court declines to determine if the victim's testimony is  inherently improbable by comparing it to the cell phone video. Instead, since the victim's testimony did not recount events that could not have occurred, the Court finds that the victim's testimony is not inherently improbable. Consequently, the jury, as the sole judge of the credibility of witnesses, could reasonably have rejected Forbes' argument that the video established that the victim's testimony was false and accepted the victim's testimony that Forbes kidnapped her for the purposes of rape, forced her to orally copulate him, forcibly orally copulated her, and forcibly raped her.

Further, the Court concludes that substantial evidence - the victim's testimony - supports Forbes' kidnapping for the purposes of rape conviction, his forcible oral copulation convictions, and his forcible rape conviction.   (Pen. Code, §§ 209, subd. (b), 261, subd. (a)(2), 288a, subd. (c)(2).) Thus, since there is no reasonable probability that a more favorable outcome on appeal would have resulted if Forbes' appellate counsel  had decided to challenge the sufficiency of the evidence supporting Forbes' convictions for kidnapping for purposes of rape, forcible oral copulation, and forcible rape, Forbes has not demonstrated that he suffered any prejudice due to his appellate counsel's allegedly deficient performance. Therefore, Forbes has failed to establish that his appellate counsel rendered ineffective assistance. (*In re Cox, supra,* 30 Cal.4th 974, 1019-1020.) Accordingly, Forbes' sixth claim fails to allege a prima facie case for habeas corpus relief.

ECF No. 39-10 at 62-64.

1    This opinion is cited within the context of procedural default, a federal case law rule in

2    habeas, so AEDPA deference is not appropriate.  Nevertheless, it is persuasive in its reasoning,

3    and again, regardless of whether petitioner is attacking the specific count related to the cell phone

4    video, or the credibility of Jane Doe in general as to all counts, such credibility determinations in

5    the context of evidence sufficiency are not proper. The jury saw the video, heard the evidence

6    related to this count, and determined that Jane Doe's version of the events was credible.[13] As

7    defense counsel pointed out: "You [the jury] are the judges of what you saw occurring in that

8    house, and you make the decision[.]"  ECF No. 39-5 at 719.

9    Petitioner must realize that while he has a right not to testify without having adverse

10   inferences drawn from the exercise of that right—there are unavoidable consequences from

11   remaining silent, i.e., the case is decided on a one-sided testimony presentation.  No one looking

12   at the trial record, could conclude that the prosecution case was so weak, or Jane Doe's testimony,

13   *as a whole or, as related to specific counts*, was so improbable that a conviction would not be

14   sustained as to all counts. The undersigned agrees completely with the opinion of the Superior

15   Court on this point. See ECF No. 39-10 at 57-64.  An appellate attorney looking at the record

16   would have seen the same problems. Even if some counsel might have raised an insufficiency of

17   the evidence issue, such is a far cry from finding that all reasonable counsel would have raised the

18   sufficiency of evidence issue. This is so particularly because basing insufficiency arguments on

19   the credibility of witnesses by attacking the evidence of record is most every time a losing claim.

20   Petitioner has not demonstrated cause or prejudice, and hence, Claims 3 and 4 remain

21   procedurally defaulted.

22   ////

23   

---

24   [13] The video was played to the jury during final argument, ECF No. 26 at 50, and Jane Doe was
     cross-examined quite a bit on the video, ECF No. 39-5 at 267-272, and the video was highlighted

25   in the defense final argument, ECF No. 39-5 at 717-719. Petitioner believes the credibility of the
     witness must be discounted, and the evidence found insufficient because, for example, the video

26   showed Jane Doe clothed, and not naked as she had testified.  There are many reasons why the
     jury might not have been persuaded by the video, e.g., it was incomplete; the discrepancies were

27   minor or immaterial; or/and Jane Doe was credible overall.  We will not know what the jury was
     thinking because the jury deliberations may not be the subject of inquiry.  But the evidence is not

28   insufficient simply because petitioner thinks the jury got it wrong.

1    The undersigned does not recognize the tag-along claims against trial and appellate

2    counsel as separate claims. They are more reasonably asserted as cause and prejudice arguments

3    for relief from procedural default.  However, to the extent petitioner meant them to be separate

4    claims, it is obvious from the discussion that no meritorious ineffective assistance claim could

5    exist.

6        C.   Claim 5: Ineffective Assistance of Counsel

7        Clearly established federal law for ineffective assistance of counsel claims is found in

8    Strickland v. Washington, 466 U.S. 668 (1984). To succeed on a Strickland claim, a defendant

9    must show that (1) his counsel's performance was deficient and that (2) the "deficient

10   performance prejudiced the defense." Id. at 687. Counsel is constitutionally deficient if his or her

11   representation "fell below an objective standard of reasonableness" such that it was outside "the

12   range of competence demanded of attorneys in criminal cases." Id. at 687–88 (internal quotation

13   marks omitted). "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a

14   trial whose result is reliable.' " Harrington, supra, 562 U.S. at 104 (quoting Strickland, 466 U.S.

15   at 687). A reviewing court is required to make every effort "to eliminate the distorting effects of

16   hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the

17   conduct from counsel's perspective at the time." Strickland, 466 U.S. at 669. Reviewing courts

18   must "indulge a strong presumption that counsel's conduct falls within the wide range of

19   reasonable professional assistance." Strickland, 466 U.S. at 689. There is, in addition, a strong

20   presumption that counsel "exercised acceptable professional judgment in all significant decisions

21   made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

22   This presumption of reasonableness means that the court must "give the attorneys the benefit of

23   the doubt," and must also "affirmatively entertain the range of possible reasons [defense] counsel

24   may have had for proceeding as they did." Cullen v. Pinholster, 563 U.S. 170,198 (2011) (internal

25   quotation marks and alterations omitted).

26       Moreover, a defense counsel has a "duty to make reasonable investigations or to make a

27   reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at

28   691. A reviewing court must "examine the reasonableness of counsel's conduct 'as of the time of

19

1   counsel's conduct.' " <u>United States v. Chambers</u>, 918 F.2d 1455, 1461 (9th Cir. 1990) (quoting

2   <u>Strickland</u>, 466 U.S. at 690). <u>See also</u> <u>Rhoades v. Henry</u>, 638 F.3d 1027, 1036 (9th Cir. 2011)

3   (counsel did not render ineffective assistance in failing to investigate or raise an argument on

4   appeal where "neither would have gone anywhere"). Prejudice is found where "there is a

5   reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

6   would have been different." <u>Strickland</u>, 466 U.S. at 694. A reasonable probability is "a

7   probability sufficient to undermine confidence in the outcome." <u>Id.</u> "The likelihood of a different

8   result must be substantial, not just conceivable." <u>Harrington</u>, 562 U.S. at 112. Under AEDPA,

9   "[t]he pivotal question is whether the state court's application of the <u>Strickland</u> standard was

10  unreasonable." <u>Id.</u> at 101. "[B]ecause the <u>Strickland</u> standard is a general standard, a state court

11  has even more latitude to reasonably determine that a defendant has not satisfied that standard."

12  <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009).

13       Petitioner raises two standalone ineffective assistance issues which were not procedurally

14  barred.[14]  The first part of the claim involves petitioner's assertion that his counsel was curt and

15  uninformative at the first meeting and took only cryptic notes. ECF No. 26 at 51-52.  Therefore,

16  the claim continues, counsel was ineffective because he failed to investigate petitioner's side of

17  the charges.  However, as he did in state court, petitioner in no way *specifically* indicates what, if

18  anything, he would have said that would have substantially made a difference in the outcome of

19  the trial.  He merely states, in essence, that he had a different story to tell on how he met Jane

20  Doe, how she came to petitioner's house, who initiated the first sex act, and how Doe sustained

21  the injuries to her face. ECF No. 44 at 18. The specifics of that story are never given, much less

22  given in a way that would undermine confidence in the outcome of the trial. Petitioner never

23  asserts that defense counsel was not able to acquire knowledge of the facts during the course of

24  pretrial events.

25       The second aspect of ineffective assistance of counsel involves a question asked by the

26  prosecutor to Jane Doe about a tattoo Jane Doe thought she saw on on petitioner's left leg during

27

28  [14] Petitioner raised additional aspects of claimed ineffective assistance of counsel in state court, but the two issues discussed here, are the only ones raised in the Amended Petition.

the bathroom sexual encounter with petitioner. Petitioner adamantly insists that he has no such tattoo, ECF No. 26 at 53, so counsel was ineffective for not having objected to the testimony.  If petitioner's defense had been one of mistaken identity, i.e., petitioner was not present when the sex acts on Jane Doe were compelled, i,e, it must have been some other person with a tattoo, he might have a point.  However, petitioner concedes he was in the room with Jane Doe. See ECF No. 44 at 18. The only issue concerned here was whether the acts were consensual. While the lack of a tattoo might have something to do with Jane Doe's credibility, the reasonable action for counsel to take was not to have "objected" to inaccurate testimony, but to cross-examine the witness, introduce exhibits, *or* for petitioner to get up on the witness stand to give the counter-evidence. Accordingly, the undersigned recommends Claim 5 be denied.

*Conclusion*

Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons set forth in these findings and recommendations, a substantial showing of the denial of a constitutional right has been made as to Claim One (Carter Error) only.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The amended habeas petition (ECF No. 26) should be denied on its merits and dismissed; and

2. The District Court should issue a certificate of appealability as to Claim One (Carter error) in the present action.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are

advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 31, 2020

<u>/s/ Gregory G. Hollows</u>
UNITED STATES MAGISTRATE JUDGE
